UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | | |
|---|---|---|
| MICHAEL GARRISON, #237608, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:04-cv-630 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| ROBERT GLENTZ, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This is a civil action brought *pro se* by a state prisoner pursuant to 42 U.S.C. § 1983. Plaintiff is an inmate at the Saginaw Correctional Facility located in Saginaw, Michigan. Plaintiff named Michigan State Police Trooper Robert Glentz as the only defendant.[1] The events giving rise to this lawsuit occurred on October 22, 2002, in Osceola County, Michigan. On that date, Trooper Glentz arrested plaintiff for reckless driving after Trooper Glentz personally observed plaintiff driving at a rate in excess of speed limit and passing through the intersection of 3 Mile Road and 50th Avenue without stopping at a stop sign. Later, as part of a plea bargain, plaintiff was permitted to plead guilty to the civil infraction of careless driving, thus avoiding the potential of another criminal conviction and the revocation his parole. Plaintiff's September 20, 2004 complaint consists of six counts:

1.  Arrest without probable cause in violation of plaintiff's Fourth Amendment rights;

_____

[1]This lawsuit is not challenge the conditions of plaintiff's confinement, nor is it an effort to overturn plaintiff's criminal conviction. All the events giving rise to this lawsuit predate the criminal sexual conduct conviction and sentence forming the basis of plaintiff's present incarceration.

2.      Violation of plaintiff's First and Fifth Amendment rights;

3.      False arrest;

4.      False imprisonment;

5.      Interference with employment; and

6.      Interference with economic expectancy.

(docket # 1).  On November 15, 2004, the court granted plaintiff leave to supplement his complaint. Plaintiff amended his complaint to include a seventh claim, alleging that defendant's actions violated his "right to travel through local roadways" under the substantive component of the Fourteenth Amendment's Due Process Clause.   Plaintiff seeks an award of monetary damages.[2]   The matter is before me on defendant's motion for summary judgment (docket # 19), pursuant to Chief Judge Robert Holmes Bell's order of reference.  (docket # 7); *see* 28 U.S.C. §636(b)(1)(B); FED. R. CIV. P. 72(b).  For the reasons set forth herein, I recommend that defendant's motion for summary judgment be granted on all plaintiff's claims.

## Applicable Standards

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *Kocak v. Community Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).  The standard

---

[2] Plaintiff did not allege whether he was suing defendant in his official capacity as an officer of the Michigan State Police.  Because any claim for monetary damages against defendant in his official capacity is obviously barred by Eleventh Amendment immunity, *see Johnson v. Dellatifa*, 357 F.3d 539, 545 (6th Cir.), *cert. denied*, 125 S. Ct. 157 (2004), I have assumed that plaintiff intended to sue defendant in his individual capacity.

for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Terry v. LaGrois*, 354 F.3d 527, 530 (6th Cir. 2004) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see Tucker v. Union of Needletrades Indus. & Textile Workers*, 407 F.3d 784, 787 (6th Cir. 2005); *Rainer v. Union Carbide Corp.*, 402 F.3d 608, 614 (6th Cir. 2005).

The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005). The party moving for summary judgment bears the initial burden of pointing out to the district court that there is an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once defendant shows that "there is an absence of evidence to support the nonmoving party's case," plaintiff has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see Hamby v. Neel*, 368 F.3d 549, 556 (6th Cir. 2004). The motion for summary judgment forces the non-moving party to "put up or shut up" and present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989); *BDT Prod., Inc. v. Lexmark Int'l, Inc.*, 124 F. App'x 329, 331 (6th Cir. 2005). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005) (quoting *Anderson*,

477 U.S. at 252).   "A nonmoving party may not avoid a properly supported motion for summary judgment by simply arguing that it relies solely or in part on credibility considerations.  Instead, the nonmoving party must present evidence to defeat a properly supported motion for summary judgment.  The party opposing summary judgment must be able to point to some facts which may or will entitle him to judgment, or to refute the proof of the moving party in some material portion, and the opposing party may not merely recite the incantation, 'credibility,' and have a trial on the hope that a jury may believe factually uncontested proof."  *Fogerty v. MGM Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004)(citations omitted).

### Proposed Findings of Undisputed Facts

The following facts are established beyond genuine issue. On Tuesday, October 22, 2002, at approximately 1:30 p.m., Trooper Glentz positioned his patrol car on the shoulder of 50th Avenue, just south of the 3 Mile Road intersection.  From this position, Trooper Glentz was able to monitor traffic as it moved through the intersection.  The stop sign on 3 Mile Road at its 50th Avenue intersection, and the stop ahead warning sign preceding it, were both clearly visible to drivers westbound on 3 Mile Road.  (Glentz Aff. ¶ 4, docket # 26).[3]  Trooper Glentz selected this location and time of day on the basis of information provided by another Michigan State Police trooper.  Trooper Ted Blanzy indicated that on the preceding Friday and Monday, Blanzy had observed an individual drive through the stop sign posted at the intersection without stopping.

---

[3]Defendant offered a photograph, purportedly of the intersection in question, as additional evidence in support of his motion.  (docket # 26, attachment # 2).  Plaintiff objects to the photograph because, "The intersection as shown in the Defendant's photo submitted is either not the actual intersection of 50th Avenue and 3 Mile Road, or not as it appeared in 2002 when Plaintiff traveled through it."  (docket # 30, Plf. Aff. ¶ 4).  It was defendant's burden to establish that the proffered photograph fairly and accurately represented the intersection at or about the time of plaintiff's arrest.  Defendant has not satisfied this  burden.  The photograph has been disregarded.

Blanzy indicated that on both occasions he had seen a late model Chevrolet westbound on 3 Mile Road disregard the posted stop sign and drive through the 50th Avenue intersection at approximately 45 miles per hour. Blanzy did not apprehend this individual. On both occasions, Trooper Blanzy had completed his shift and was driving home from work.[4]

At approximately 2:35 p.m., Trooper Glentz observed a 1991 Chevrolet Baretta traveling westbound on 3 Mile Road. Glentz saw plaintiff disregard the stop sign at 3 Mile's intersection with 50th Avenue and drive through the intersection at what Trooper Glentz perceived as a very high speed. It appeared to Trooper Glentz that if other traffic had been present in the intersection, that plaintiff would not have been able to avoid a collision. Trooper Glentz started immediate pursuit. He eventually caught up with plaintiff approximately one and one-half miles west of 50th Avenue. Trooper Glentz estimated plaintiff's speed at 80 miles per hour or more. (Glentz Aff. ¶¶ 1-3).

Plaintiff's verified complaint, sworn under penalty of perjury, states that on the afternoon of October 22, 2002 plaintiff was driving westbound 3 Mile Road in a rural area of Osceola County near Evart, Michigan. Plaintiff was traveling from his residence in Mt. Pleasant, Michigan to work in Evart, Michigan at Collins and Aikman Corporation. Plaintiff's normal route was highway U.S. 10. In October 22, 2002, plaintiff was using 3 Mile Road to avoid a U.S. 10

---

[4] Plaintiff cites *United States v. Marls*, 227 F. Supp. 2d 708 (E.D. Mich. 2002) for the proposition that none of the information defendant obtained from Trooper Blanzy can be considered "legal or reliable." (docket # 31, at 5). *Marls* does not remotely support this proposition. *Marls* discussed a distinction between a "statutorily invalid" arrest under state law and a constitutionally invalid arrest on Fourth Amendment grounds, and it emphasized that only the latter provides a basis for exclusion of evidence. *Id.* at 713-14. Plaintiff now apparently believes that his arrest was statutorily invalid under MICH. COMP. LAWS § 764.15 because the exchange of information between Troopers Glentz and Blanzy did not fall within a "police team" theory codified by the statute. (Plf. Brief at 5; *see* 277 F. Supp.2d at 711). Plaintiff long ago waived any such state-law defense by entering his plea and by his failure to pursue any state court appeal.

construction zone.  After being stopped by Trooper Glentz, plaintiff  produced his driver's license and registration.  Trooper Glentz asked plaintiff if he knew why he had been stopped.  Plaintiff's response was that he didn't know why he had been stopped, but plaintiff then he asked Trooper Glentz if he had been speeding.  Plaintiff's verified complaint states that plaintiff was "traveling about 5 miles an hour over the speed limit,"[5] and that this action formed the basis for plaintiff's question about speeding:

> The Plaintiff was unfamiliar with this route of travel, and asked Defendant Glentz if he was speeding, because the Plaintiff was traveling about 5 miles an hour over the speed limit due to not being familiar with the route of travel, and the possibility of his arriving at his job late.

(Complaint at 2, ¶ 5).  Trooper Glentz asked plaintiff, "Do you want to tell me what you did back there?"  Plaintiff's response was, "I didn't do anything."  (*Id.*, ¶ 6).  Trooper Glentz directed plaintiff place his hands behind his back and arrested plaintiff for reckless driving.   Plaintiff's sworn allegations regarding his post-arrest verbal exchanges with Trooper Glentz are set forth verbatim below:

_____

[5] Plaintiff is bound by the factual admission in his  verified complaint that he was speeding. The factual statements in a verified complaint are considered to be judicial admissions.  *See Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995).  Once a party has made a judicial admission he cannot introduce evidence to controvert it.  *See Murrey v. United States*, 73 F.3d 1448, 1455 (7th Cir. 1996).  On January 13, 2005, plaintiff filed an affidavit in opposition to defendant's motion for summary judgment.  Paragraph 2 of plaintiff's affidavit contains the following statement: "The Defendant's statement that I was speeding [o]n October 22, 2002, prior to being stopped by the defendant is false . . . ." (Plf. Aff. ¶ 3).  Although plaintiff's sworn statements appear to be contradictory, they can be reconciled.  Plaintiff's affidavit avoids any direct claim by plaintiff that he was not speeding.  Such a statement would be directly contrary to plaintiff's verified complaint sworn under penalty of perjury.  Plaintiff's apparent disagreement is with the defendant's statement regarding how far plaintiff was above the speed limit.   The affidavit's claim that defendant's statement "is false," can reasonably read as expressing plaintiff's disagreement with the portion of defendant's affidavit  estimating plaintiff's speed at, or in excess of, eighty miles per hour (docket # 26, Glentz Aff. ¶ 4), without exposing plaintiff to a potential perjury prosecution.

>The Defendant then proceeded to arrest the Plaintiff, and stated to Plaintiff "You ran a stop sign back there".  The Plaintiff then told the Defendant that he never saw any stop sign.
>
>The Defendant then stated to the Plaintiff "if you would of told me what you did, I would of just wrote you a ticket, but you want to play stupid".
>
>The Plaintiff then stated "I have my cell phone right here in my pocket, can I call in to work real quick to tell them I wont be showing up?" and the Defendant stated "No".

(Complaint, ¶¶ 7-10).  Plaintiff was transported to and lodged in the Osceola County jail.  The county prosecutor charged plaintiff with reckless driving.  A court subsequently set plaintiff's bond, but plaintiff was not eligible for immediate release.  Plaintiff had been on parole at the time of his arrest.  Plaintiff's parole officer, Ms. Trina Schall, had filed a detainer preventing plaintiff's release.  According to plaintiff, he made a telephone call to Ms. Schall.  She indicated that she was aware that plaintiff had been charged with reckless driving.  Plaintiff "told his parole officer that all he did was run a stop sign . . . ." (Complaint at 3).  Ms. Schall expressed skepticism, and indicated that plaintiff must have done something more that he was not disclosing.  She indicated that she would consider lifting the detainer after she had more information.

On October 23, 2002, Ms. Schall elected to lift plaintiff's detainer.  Plaintiff was able to post bond and was released.  Upon arrival at work on Wednesday, October 23, 2002, plaintiff's employer notified him that his employment had been terminated.  (Complaint at 3).

Plaintiff filed his verified complaint on September 20, 2004.  On January 13, 2005, plaintiff filed his affidavit in opposition to defendant's motion.  (docket # 30, attachment).  Paragraph 8 of plaintiff's affidavit states that he "admitted responsibility to a civil infraction" by pleading guilty to the offense of careless driving.[6]  (Plf. Aff. ¶ 8).  Plaintiff states, "I admitted

---

[6] Plaintiff's affidavit does not claim that plaintiff stopped at the intersection on October 22, 2002, nor could he given his plea.  Paragraph 2 of the affidavit states, "[T]he Defendant's statement that I disobeyed the same stop sign at the intersection of 50th Avenue and 3 Mile Rd. on 3 days in

responsibility to a civil infraction because it was the only violation I ever committed in the first instance."  (Plf. Aff. ¶ 8).

## Discussion

1.    Defendant's Motion is Ready for Decision

Plaintiff argues that defendant's motion for summary judgment should be denied because plaintiff requires more time to conduct discovery.  A party opposing a motion for summary judgment has no absolute right to additional time for discovery.  *See Wallin v. Norman*, 317 F.3d 558, 564 (6th Cir. 2003); *Lewis v. ACB Business Servs., Inc.*, 135 F.3d 389, 409 (6th Cir. 1998).  In order to invoke the court's discretion in this regard, a party opposing a motion for summary judgment must file a motion for additional time under Rule 56(f), which provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment and may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed. R. Civ. P. 56(f).  Rule 56(f), however, is "not a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that his opposition is meritorious."  *Lewis*, 135 F.3d at 409.  Rather, the affidavit of the nonmoving party must show how postponement of a ruling on the motion will enable him to rebut the motion for summary judgment.  *See Allen v. CSX Transp., Inc.*, 325 F.3d 768, 775 (6th Cir. 2003).  It is incumbent upon the nonmoving party to include within the affidavit a description of the discovery needed and an

---

a row is false."  Defendant Glentz never stated that plaintiff drove through the intersection without stopping "3 days in a row."  Glentz observed plaintiff drive through the intersection without stopping on Tuesday, October 22, 2002, and based on the time of day, the type of car, and the nature of the traffic violations, defendant believed that plaintiff was the same individual Trooper Blanzy had observed the two previous weekdays: Friday October 18th and Monday October 21st.

affirmative demonstration of how this discovery will allow the nonmoving party to rebut the motion.

*See Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*, 280 F.3d 619, 627 (6th Cir. 2002).  References in a brief asserting a need for more discovery do not qualify as a motion under Rule 56(f).  *See Cacevic v. City of Hazel Park*, 226 F.3d 483, 489 (6th Cir. 2000); *State of California v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998).  General pleas for more discovery, unsupported by specific facts, are insufficient.  *See Summers v. Leis*, 368 F.3d 881, 887 (6th Cir. 2004)("Bare allegations or vague assertions of the need for discovery are not enough" and the affiant "must state with some precision the materials he hopes to obtain with further discovery and exactly how he expects those materials would help him in opposing summary judgment."); *Cacevic*, 226 F.3d at 489; *see also Bramlage v. Wells Fargo Home Mortgage, Inc.*, No. 04-1561, 2005 WL 1869708, at * 3-4 (6th Cir. Aug. 3, 2005).

Plaintiff invokes Rule 56(f) (docket # 30 at 1) and argues that summary judgment "cannot be granted until after adequate discovery." (docket # 31 at 2).  Plaintiff's affidavit (docket # 30, attachment) is considered as a Rule 56(f) affidavit.  The affidavit is set forth below in pertinent part:

3.   The Defendant's statement that I was speeding on October 22, 2002, prior to being stopped by the defendant is false, and if I had been speeding as alleged that the defendant would have issued a speeding citation at the time.[7]

\* \* \*

---

[7]Courts have repeatedly rejected the argument appearing in plaintiff's affidavit that he could not have been speeding because he did not receive a speeding ticket.  The stop of plaintiff's vehicle and his arrest are not undermined by a police officer's  decision not to issue the driver a ticket.  *See Carlsen v. Duron*, No. 99-4065, 2000 WL 1205822, at * 3 (10th Cir. Aug. 24, 2000); *United States v. Dhinsa*, 171 F.3d 721, 725-26 (2d Cir. 1998); *United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998).

5.      That the Plaintiff is confined in prison, and does not have an attorney, and is therefore prevented because of his current circumstances from discovering or proving which fact in the above paragraph 3 is true.

Discovery is obviously unnecessary on the issue of whether plaintiff was speeding[8] because plaintiff is bound by the admission in his verified complaint, sworn under penalty of perjury, that he was speeding.  "Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact.  Factual assertions in pleadings . . . are considered judicial admissions conclusively binding on the party who made them."  *Barnes v. Owens-Corning Fiberglass Corp.*, 201 F.3d 815, 829 (6th Cir. 2000)(citations omitted); *see Karkoukli's, Inc. v. Dohany*, 409 F.3d 279, 283 (6th Cir. 2005)("Judicial admissions eliminate the need for evidence on the subject matter of the admission, as admitted facts are no longer at issue.").  Plaintiff's argument in his reply brief that his admission in the verified complaint  that he was exceeding the speed limit "has no significance" (docket # 35 at 1) is patently incorrect.  Plaintiff's Rule 56(f) affidavit does not provide any basis for deferring a decision on defendant's motion for summary judgment.


2.      <u>Federal Claims</u>

Plaintiff cites 42 U.S.C. § 1983 as the foundation of his federal claims.  Section 1983 "does not create any substantive rights but rather merely provides remedies for rights established elsewhere."  *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 302 (6th Cir. 2005).  Plaintiff

---

[8]Plaintiff's brief contains an argument that summary judgment cannot be granted because defendant "has not complied with any or Plaintiff's discovery requests."  Defendant is not in default on any discovery obligation.  (docket # 25).

claims that the arrest by defendant violated plaintiff's First, Fourth, Fifth and Fourteenth Amendment rights. Qualified immunity is among the grounds on which defendant seeks judgment in his favor on plaintiff's federal claims.

In *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the Supreme Court held that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818. The standard to be applied in deciding a claim of qualified immunity is one of objective reasonableness. *Id.* The question whether qualified immunity attaches to an official's actions is a purely legal issue for the trial court. *See Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004); *Summar v. Bennett*, 157 F.3d 1054, 1057 (6th Cir. 1998); *Dominque v. Telb*, 831 F.2d 673, 677 (6th Cir. 1987).

The Supreme Court's decision in *Saucier v. Katz*, 533 U.S. 194 (2001), emphasized that the defense of qualified immunity must be addressed in proper sequence.

> In a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in proper sequence. Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. Qualified immunity is an entitlement not to stand trial or face other burdens of litigation. The privilege is *an immunity from suit* rather than a mere defense to liability; and like an absolute liability, it is effectively lost if a case is erroneously permitted to go to trial. As a result, we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.

533 U.S. at 200-01 (citations omitted). The initial inquiry must be whether the plaintiff has alleged and supported with evidence facts showing that the officer's conduct violated a constitutional right. 533 U.S. at 201; *Flaskamp v. Dearborn Pub. Sch.*, 385 F.3d 935, 940-41 (6th Cir. 2004); *Summers*, 368 F.3d at 888; *Akers v. McGinnis*, 352 F.3d 1030, 1042 (6th Cir. 2004). If the first question is

answered in the affirmative, the court must then determine whether that right was clearly established such that a reasonable official, at the time the act was committed, would have understood that his behavior violated that right.  533 U.S. at 201.  "A constitutional right must be clearly established in a particularized sense.  'The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  *Rippy v. Hattaway*, 270 F.3d 416, 424 (6th Cir. 2001) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

"It is crucial, the Supreme Court has noted, that the second inquiry 'be undertaken in light of the specific context of the case, not as a broad general proposition.'  Thus, '[t]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"  *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001) (quoting *Saucier*, 533 U.S. at 201); *see Brosseau v. Haugen,* 125 S. Ct. 596, 598 (2004); *Weaver v. Shadoan*, 340 F.3d 398, 407 (6th Cir. 2003); *Risbridger v. Connelly*, 275 F.3d 565, 569 (6th Cir. 2002).  The court, of course, need not find a case in which the very action in question has previously been held unlawful, but in light of pre-existing law, the unlawfulness must be apparent.  *See Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003); *Risbridger*, 273 F.3d at 569; *Comstock*, 273 F.3d at 702.  However, "'qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.'"  *Rippy*, 270 F.3d at 424 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  "Thus, officials are 'entitled to qualified immunity [when] their decision was reasonable, even if mistaken.'"  *Toms v. Taft*, 338 F.3d 519, 524 (6th Cir. 2003) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).  The court must focus on whether, at the time defendant acted, the right asserted was "clearly established" by the decisions of the Supreme Court or the Sixth Circuit.  *See Reynolds v. City of Anchorage*, 379 F.3d 358, 366 (6th Cir. 2004); *Gragg v. Kentucky Cabinet for*

-12-

*Workforce Dev.*, 289 F.3d 958, 964 (6th Cir. 2002); *Comstock v. McCrary*, 273 F.3d at 702; *Walton*

*v. City of Southfield*, 995 F.2d 1331, 1335-36 (6th Cir. 1993).  "If reasonable officials could disagree

on the issue, immunity should be recognized."  *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999);

*see Akers*, 352 F.3d at 1042.  "For qualified immunity to be surrendered, pre-existing law must

dictate, that is truly compel (not just suggest or allow to raise a question about), the conclusion for

every-like situated, reasonable government agent that what the defendant is doing violates federal

law in the circumstances."  *Saylor v. Board of Educ.*, 118 F.3d 507, 514 (6th Cir. 1997); *see Gragg*,

289 F.3d at 964.  "The burden of convincing a court that the law was clearly established 'rests

squarely with the plaintiff.'"  *Key* 179 F.3d at 1000 (quoting *Cope v. Heltsley*, 128 F.3d 452, 459 (6th

Cir. 1997)).

      A.     Fourth Amendment Claim

          Plaintiff argues that defendant arrested him without probable cause.  Whether the

facts establish probable cause to justify an arrest is a question of law for the court.  *See  United States*

*v. Montgomery*, 377 F.3d 582, 585 (6th Cir. 2004).  "The Fourth Amendment, which is made

applicable to the states by its incorporation into the Fourteenth Amendment, mandates that a law

enforcement officer may not seize an individual except after establishing probable cause that the

individual has committed or is about to commit a crime."  *Radvansky v. City of Olmsted Falls*, 395

F.3d 291, 302 (6th Cir. 2005).  This standard permits a police officer to make a warrantless arrest

even for a misdemeanor, no matter how minor, so long as he has probable cause to believe that an

offense has been committed.  *Atwater v. City of Lago Vista*, 532 U.S. 318, 355 (2001); *see Straub*

*v. Kilgore*, No. 02-5542, 2004 WL 1193841, at \*3 (6th Cir. May 27, 2004).  "If an officer has

probable cause to believe that an individual has committed even a very minor criminal offense in his

presence, he may, without violating the Fourth Amendment, arrest the offender." 532 U.S. at 354.

"Probable cause is defined as 'reasonable grounds for belief, supported by less than prima facie proof, but more than mere suspicion.'" *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). "The Supreme Court has made clear that there is no precise formula for determining the existence or nonexistence of probable cause; rather, a reviewing court is to take into account the factual and practical considerations of everyday life that would lead a reasonable person to determine that there is a reasonable probability that illegality has occurred or is about to occur." *United States v. Strickland*, 144 F.3d 412, 415 (6th Cir. 1998). The Fourth Amendment does not require that a police officer <u>know</u> a crime has occurred at the time the officer arrests or searches a suspect. The Fourth Amendment, after all, necessitates an inquiry into probabilities, not certainty. *See United States v. Barrett*, 890 F.2d 855, 861 (6th Cir. 1989); *see also Scott v. City of Bexley*, No. 00-3193, 2001 WL 599711, at * 1 (6th Cir. May 24, 2001). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 125 S. Ct. 588, 593 (2004). The existence of probable cause is to be determined under the totality of the circumstances, including a realistic assessment of the situation from a law enforcement officer's perspective. *Ferguson*, 8 F.3d at 392. "A reviewing court must assess the existence of probable cause 'from the perspective of a reasonable officer on the scene, rather than with the vision of 20/20 hindsight.'" *Radvansky*. 395 F.3d at 302 (quoting *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001)).

Plaintiff was arrested for reckless driving. In Michigan, reckless driving is a criminal misdemeanor. *See Polk v. Hopkins*, No. 04-1130, 2005 WL 1002102, at * 4 n.2 (6th Cir. Apr. 29, 2005)(citing Mich. Comp. Laws §257.626). Michigan law provides that driving a vehicle "in willful

or wanton disregard for the safety of persons or property" constitutes "reckless driving."   MICH. COMP. LAWS §257.626(1).  Plaintiff was speeding as he drove through the intersection without stopping.  Federal and state courts have recognized that speeding alone is sufficient to provide probable cause for arrests under this statute.  It is not necessary for the driver to be driving in an erratic manner.  *Polk*, 2005 WL 1002102, at * 1, 4; *Feathers v. Aey*, 319 F.3d 843, 851 (6th Cir. 2003); *Kieft v. Barr*, 214 N.W.2d 838, 839 (Mich. 1974); *People v. Davenport*, 208 N.W.2d 562, 563 (Mich. Ct. App. 1973).  Defendant personally observed plaintiff exceeding the speed limit and driving through the intersection without stopping, and had information suggesting that plaintiff had endangered others in this manner on other occasions. Although plaintiff states that he now believes he could have avoided a collision if other traffic had been present in the intersection, the court's review must be based on an  objective standard, not plaintiff's favorable  retrospective opinion of his evasive driving abilities.   Under these circumstances, any Fourth Amendment claim by plaintiff that defendant lacked probable cause to arrest him is not viable. Defendant had more than probable cause to believe that a crime had been committed and that plaintiff had committed it.

Assuming *arguendo* that a Fourth Amendment violation had occurred, defendant would nonetheless be entitled to judgment in his favor on the alternative basis of qualified immunity. The constitutional right must be clearly established in a particularized sense rather than a general proposition, and the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  *See Rippy*, 270 F.3d at 424.  There is no case law suggesting, much less clearly establishing, that a police officer arresting an individual for reckless driving under these or closely analogous circumstances would violate the driver's Fourth Amendment rights.

-15-

B.    First and Fifth Amendment Claims

Plaintiff alleges that defendant violated his Fifth Amendment rights.  Plaintiff has produced no evidence that any statement plaintiff made to defendant was used against plaintiff in court.  *See Chavez v. Martinez*, 538 U.S. 760, 765 (2003); *McKinley v. City of Mansfield*, 404 F.3d 418 (6th Cir. 2005); *Lingler v. Fechko*, 312 F.3d 237, 239-40 (6th Cir. 2002).  Defendant is entitled to judgment in his favor as a matter of law on plaintiff's Fifth Amendment claim.

Defendant is likewise entitled to judgment in his favor as a matter of law on plaintiff's First Amendment retaliation claim.  The federal appellate courts are in agreement that the presence of probable cause for an arrest precludes any viable First Amendment retaliation claim by a motorist asserting that the arrest was actually be motivated by the motorist's speech. *See Draper v. Reynolds*, 369 F.3d 1270, 1277 n.11 (11th Cir. 2004)(citing *Dahl v. Holley*, 312 F.3d 1228, 1236 (11th Cir. 2002)); *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001); *Smithson v. Aldrich*, 235 F.3d 1058, 1063 (8th Cir. 2000).

Alternatively, applying the qualified immunity standards  previously set forth, I find that defendant is entitled to judgment in his favor on the basis of qualified immunity.


C.    Substantive Due Process Claim

Plaintiff alleges that defendant's actions violated his "constitutional right to travel through local roadways under the Substantive Due Process Clause of the Fourteenth Amendment to the U.S. Constitution."  (docket # 5).  Upon review, I find that plaintiff's claim, if any, arose under the Fourth Amendment, and that defendant is entitled to judgment in his favor as a matter of law on plaintiff's purported substantive due process claim.

-16-

"The Supreme Court has cautioned courts to carefully scrutinize so-called substantive due process claims brought under § 1983 'because guideposts for responsible decisionmaking are scarce and open-ended.'" *Upsher v. Grosse Pointe Pub. Sch. Sys.*, 285 F.3d 448 (6th Cir. 2002)(quoting *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992)). "[W]here a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994)(quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)); *see Banks v. City of Whitehall*, 344 F.3d 550, 554 (6th Cir. 2003). Here, the Fourth Amendment provides plaintiff's explicit constitutional protection against unreasonable searches and seizures. *See Boone v. Spurgess*, 385 F.3d 923, 933(6th Cir. 2004); *see also Bryant v. City of New York*, 404 F.3d 128, (2d Cir. 2005)("Substantive due process analysis is inappropriate where a claim is covered by the Fourth Amendment."). Plaintiff has no greater substantive due process rights than the protections provided by the Fourth Amendment. I find that defendant is entitled to judgment in his favor as a matter of law on plaintiff's substantive due process claim.

Qualified immunity provides an alternative basis for judgment in defendant's favor on this claim. On October 22, 2002, there was no clearly established right to intrastate travel guaranteed by the substantive component of the Due Process Clause. Plaintiff relies on the Supreme Court's decision in *Saenz v. Roe*, 526 U.S. 489 (1999) as support for his argument that his arrest violated a constitutional right to travel local roadways guaranteed by the substantive component of the Fourteenth Amendment's Due Process Clause. In *Sanez*, the issue before the Supreme Court was the constitutionality of a California statute which limited the maximum welfare benefits payable to

-17-

newly arrived state residents based on the amount paid by the recipient's prior state of residence. *Id.* at 491. The Supreme Court stated, "The word 'travel' is not found in the text of the Constitution. Yet, the 'constitutional right to travel *from one state to another* is firmly imbedded in our jurisprudence.'" 526 U.S. at 498 (quoting *United States v. Guest*, 383 U.S. 745 (1966))(emphasis added). The Supreme Court stated that the right to interstate travel has at least three components: (1) the right of a citizen of one State to enter and to leave another state; (2) the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second state; and (3) for those travelers who elect to become permanent residents, the right to be treated like other citizens of that state. Plaintiff's complaint obviously does not involve any of these rights. Plaintiff's travel on October 22, 2002 was entirely within the borders of the State of Michigan. Plaintiff's complaint concerns only intrastate travel,[9] not interstate travel.

There was no clearly established right to intrastate travel on the date of plaintiff's arrest because the federal appellate courts remain divided on the issue of whether any constitutionally guaranteed right of intrastate travel exists. *See Hutchins v. District of Columbia*, 188 F.3d 531, 537-38 (D.C. Cir. 1999)(collecting cases). On the date of plaintiff's arrest, the clearly established law in the Sixth Circuit was that there was no constitutionally guaranteed right to intrastate travel. *See Wardwell v. Board of Educ.*, 529 F.2d 625, 627 (6th Cir. 1976)("We find no support for plaintiff's theory that the right to intrastate travel has been afforded federal constitutional protection."). The first and only case in which the Sixth Circuit has recognized a constitutional right to intrastate travel

---

[9]With regard to interstate travel, the Supreme Court Stated, "For purposes of this case, therefore, we need not identify the source of the particular right in the text of the constitution. The right of free ingress and egress to and from neighboring States, which was expressly mentioned in the text of the Articles of Confederation, may simply have been conceived from the beginning as a necessary concomitant of the stronger Union the Constitution created." *Sanez*, 526 U.S. at 501.

was not decided until January 2, 2003. *See Johnson v. City of Cincinnati*, 310 F.3d 484 (6th Cir. 2003). In *Johnson v. City of Cincinnati*, the Sixth Circuit addressed constitutional challenges to the City of Cincinnati's drug-exclusion ordinance. The plaintiffs argued that the ordinance violated their rights to freedom of movement and intrastate travel because it excluded arrested and convicted individuals from Cincinnati's Over the Rhine neighborhood for periods of ninety days, and one year respectively. 310 F.3d at 493. The Sixth Circuit, citing *Albright*, devoted a significant portion of its *Johnson* opinion to the issue of whether the explicit protections of the Fourth Amendment applied. Ultimately the panel concluded that the Fourth Amendment's prohibition against unreasonable searches and seizures did not provide the appropriate analytical framework for evaluating the ordinance's post-conviction provisions, and ultimately based a decision overturning the ordinance on the substantive component of the Due Process Clause. 310 F.3d at 490-93. The analysis applied by the Sixth Circuit in section III of the *Johnson v. City of Cincinnati* opinion completely undermines any claim by plaintiff that the arresting officer defendant's actions violated a constitutionally guaranteed right to intrastate travel under the substantive component of the Fourteenth Amendment's Due Process Clause. The Sixth Circuit emphasized that the Fourth Amendment "plainly applies to investigatory stops and formal arrests," and that the "Fourth Amendment seizure continues throughout the time the person remains in custody of the arresting officer[]." *Johnson*, 310 F.3d at 491-92. The Fourth Amendment was plaintiff's explicit source of constitutional protection from the moment of the initial traffic stop until defendant relinquished custody of plaintiff at the Osceola County jail. Defendant is entitled to judgment in his favor as a matter of law on plaintiff's substantive due process claim.

In summary, I find that defendant is entitled to judgment in his favor as a matter of law on all plaintiff's federal claims.


3.      <u>State-law Tort Claims</u>

Plaintiff's state-law claims require little discussion.  Defendant had probable cause to arrest plaintiff.  The absence of probable cause is an essential element for the torts of false arrest and false imprisonment.  "If the arrest was legal, there has not been a false arrest or false imprisonment."  *Peterson Novelties, Inc. v. City of Berkley*, 672 N.W.2d 351, 362  (Mich. Ct. App. 2003); *see Lewis v. Farmer Jack Div., Inc.*, 327 N.W.2d 893, 894 (Mich. 1982); *Walsh v. Taylor*, 689 N.W.2d 506, 514 (Mich. Ct. App. 2004); *see also Wolfe v. Perry*, 412 F.3d 707, 719 (6th Cir. 2005)("[B]ecause the absence of probable cause is a necessary element for the state-law claims of false arrest and malicious prosecution, we affirm the district court's grant of summary judgment to [defendant] on those claims.")  Defendant is entitled to judgment in his favor as a matter of law on plaintiff's false arrest and false imprisonment claims.

Plaintiff's two remaining claims, "interference with employment" and "interference with economic expectancy," require little discussion.  Defendant did not terminate plaintiff's employment.  Collins and Aikman Corporation fired plaintiff.  Plaintiff's verified complaint establishes that defendant did not have  knowledge of plaintiff's employment until after plaintiff had been arrested.  Plaintiff's purported intentional tort claims are simply not viable under the circumstances.  *See Mino v. Clio Sch. Dist.*, 661 N.W. 2d 586, 597 (Mich. Ct. App. 2003); *see also Badiee v. Brighton Area Sch.*, 695 N.W.2d 521, 539 (Mich. Ct. App. 2005).

Defendant is entitled to judgment in his favor as a matter of law on plaintiff's state-law claims on the alternative basis of statutory immunity. *See* MICH. COMP. LAWS § 691.1401; *see also Walsh*, 689 N.W.2d at 513-16; *Kurz v. City of Grosse Pointe Farms*, No. 176327, 1997 WL 33353620, at * 1 (Mich. Ct. App. Mar. 28, 1997).

## **Recommended Disposition**

For the foregoing reasons, I recommend that defendant's motion for summary judgment (docket # 19) be granted, and that judgment be entered in defendant's favor of defendant on all plaintiff's claims.

Dated:   September 7, 2005          /s/  Joseph G. Scoville_____
                                    United States Magistrate Judge

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Neuman v. Rivers*, 125 F.3d 315, 322-23 (6th Cir.), *cert. denied*, 522 U.S. 1030 (1997); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).